**The HOUSTON CORPORATION, a corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13859.**

United States Court of Appeals, Ninth Circuit.

Feb. 10, 1955.

842

Bertram L. Linz, Beverly Hills, Cal., for appellant.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Ellis N. Slack, Morton K. Rothschild, Sp. Assts. to Atty. Gen., Laughlin E. Waters, U: S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE, and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Plaintiff-appellant sued (and lost) in the district court to recover from the United States excise taxes in the amount of $18,037.64 paid in the year 1948. The taxes were paid on the sales of 21 camera cranes, 21 sets of wheel locks and 21 camera tables. The three classes of objects were listed and taxed separately. But together a crane, table and set of wheel locks make up a unit upon which ordinarily a commercial studio motion picture camera is placed. Two persons usually sit on the table with the camera when operating the latter.

The camera crane is described as the third stage of development in bases for large motion picture cameras. First, there was the tripod. The dolly, a wheeled platform, came next. Lastly, the camera crane was developed. It is a counterbalanced arm on a sort of post pivot. It moves up and down or horizontally and seems to have many desirable attributes for filming pictures. Apparently the device has no commercial use except for motion picture work and for "live" television broadcasts [1] where a smaller interchangeable table is used on the crane.

We think it fair to say that here again we have another lawsuit precipitated by the revolution in the entertainment field called television. The plaintiff-appellant paid his taxes under Section 3406(a) (4) of the Internal Revenue Code as amended in the 1942 Revenue Act, 26 U.S.C.A., which reads as follows:

"(a) Imposition. There shall be imposed on the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the rate, on the price for which sold, set forth in the following paragraphs *(including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof)*: (emphasis added)

\*     \*     \*     \*     \*     \*

"(4) Photographic apparatus.—Cameras (except cameras weighing more than four pounds exclusive of lens and accessories) and lenses, photographic apparatus and equipment, and any apparatus or equipment designed especially for use in the taking of photographs or motion pictures or in developing, printing, or enlarging photographs or motion pictures, 25 per centum; \* \* \*."

Not long after the tax was paid by the Houston Corporation for the 21 cranes and their accessories (the subject of this claim) made for motion picture producers, the Commissioner of Internal Revenue ruled that the self-same crane with a little different table, when manufactured for live television broadcasts using a television video camera was not subject to the excise tax required to be paid if the table should be manufactured for motion picture production. The

---

1. Sometimes called "video".

situation is further confounded by evidence that one movie producer prefers to use the television table on his cranes when he is making movies. And, if that is not trouble enough, it seems that the movie table could be used for live television broadcasts.

It should now be observed that under the 1951 Revenue Act, the apparatus here taxed is clearly not subject to taxation. So what we here decide is the matter of $18,037.64 and interest on this particular claim. The decision will have little value as precedent and will probably sink into the limbo of dead tax cases and legislation.

Appellant meticulously traces excise taxes on cameras from the First World War[2] through the 1951 Revenue Act,[3] now superseded by Sections 4171, 4172, and 4173 of the 1954 Revenue Act.[4] Appellant stoutly argues it is exempt. We think not. We agree with the district court.

If legislation were the field of this court, we could say that the tax was quite unfair to appellant and that the 1942 statute should have been changed. Somehow this was accomplished in the 1951 and 1954 acts. Certainly reason is poor for exempting from taxation the heavy motion picture camera and taxing the crane on which the camera sits.

Without knowing, one may suspect that when the statute was being adopted persons interested in buying and selling heavy motion picture cameras presented cogent reasons to the Congress for the exception of such cameras from excise taxes. Those manufacturing cranes and devices of the same class may not have presented their case for exemption to the committees of the Congress. And, of course, in 1942 when the 1941 act was revised television was not worth anyone's bother as a source of revenue for the public treasury.[5]

The parties have not pressed upon us the argument that if the statute taxes motion picture cranes and exempts a similar crane used for live television the statute is unconstitutional. We doubt if under the circumstances it was. Perhaps, if the discrimination had long continued (it is gone now) it might have achieved unconstitutionality through time as did the 70 car law in Southern Pacific v. State of Arizona, ex rel., Sullivan, 325 U.S. 761, 65 S.Ct. 1515, 89 L. Ed. 1915.

■ Appellant argues that the exception for cameras weighing over four pounds in the 1942 act necessarily included camera accessories, apparatus, or equipment. We think the crane and its table and wheel locks were either photo-

---

2. War Revenue Act of 1917, § 600(j), 40 (I) Stat. 317 (1917).
   "Upon all cameras sold by the manufacturer, producer or importer, a tax equivalent to three per centum of the price for which so sold" is hereby imposed.

3. Revenue Act of 1951, § 486(a), 65 Stat. 534 (1951), 26 U.S.C.A. § 3406(a) (4).
   "(4) Photographic Apparatus. Cameras and camera lenses, and unexposed photographic film in rolls (including motion picture film), 20 per centum. The tax imposed under this paragraph shall not apply to X-ray cameras, to cameras weighing more than four pounds exclusive of lens and accessories, to still camera lenses having a focal length of more than one hundred and twenty millimeters, to motion picture camera lenses having a focal length of more than thirty millimeters, to X-ray film, to film more than one hundred and fifty feet in length, or to film more than twenty-five feet in

length and more than thirty millimeters in width. Any person who acquires unexposed photographic film not subject to tax under this paragraph and sells such unexposed film in form and dimensions subject to tax hereunder (or in connection with a sale cuts such film to form and dimensions subject to tax hereunder) shall for the purposes of this subsection be considered the manufacturer of the film so sold by him."

4. Not changed substantively from the 1951 Revenue Act except for the rate of tax.

5. Appellant in its brief tells us that
   "As of January 1, 1942 (ten months before said 1942 Revenue Act's effective date), there were 9 commercial television stations and 23 experimental television stations licensed."
   This confirms our view that television in 1942 was just not of sufficient size to be considered a good revenue prospect.

graphic apparatus or equipment. The exception is "except cameras weighing more than four pounds exclusive of lenses and accessories". Suppose we say the crane is an apparatus. Still we can find no warrant for making the exception read, "except cameras weighing more than four pounds exclusive of lenses and accessories *and except lenses and accessories (or apparatus)*". (Emphasis supplied.) In arriving at this conclusion we have carefully considered the legislative history of excise taxes on cameras and related items which appellant has so splendidly set forth in detail and also the contemporaneous statutes on excise taxes on refrigerators and washing machines. On those products generally the tax applied on the basic item and related items if the use was connected with personal living and not if the use was commercial. But for those items different language was used. Thus, a different rule resulted.

Hereinabove, we have discussed appellant's argument that the cranes and their accessories should not have been taxed herein by the Treasury Department because the same department exempted practically the same article when manufactured for television video (live broadcast) cameras. Apparently, the argument was presented to Congress and Congress reacted favorably in passing the 1951 excise tax provisions. We think the express language of the 1942 act is too strong a barricade for us to break through and extend to motion picture cranes the exemption apparently there given to the same camera crane used in television.

 . We think under the evidence the trial court was justified in finding the camera cranes here taxed were designed for use in the taking of motion pictures. We think that is permissible when only two possible uses are shown. We cannot

upset the finding.[6] It might be otherwise, for example, if a common wooden box with a thousand possible uses were involved. Maybe we could then disturb such a finding.

■ Lastly, appellant urges that all reasonable doubts in construction should be resolved in favor of the taxpayer. Generally that is true. But we have been unable to find any reasonable doubt in the plain meaning of the ordinary language of the 1942 act as applied to the items here taxed. We have looked hard for these doubts but we have been unable to find them.

The judgment is affirmed.

6. The evidence clearly shows that the crane was developed originally by the motion picture industry for use with motion picture cameras. We do not think it necessary to rule upon whether the Commissioner correctly exempted the similar crane from excise taxation when it was produced for use in connection with television video broadcasts. We do express our doubts as to whether that exemption was valid.